In re Diana Lee Murray SMITH, Debtor.

In re Ben Joe SMITH, Debtor.

Bankruptcy Nos. 96–41156–
399, 96–41214–399.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

July 26, 1996.

**214**

Timothy J. Mullin, Clayton, MO, for Debtors.

John V. LaBarge, Jr., Diana S. Daugherty, Standing Chapter 13 Trustee, St. Louis, MO.

John F. Sutherland, St. Louis, MO, Amicus Curiae Mercantile Bank of St. Louis, N.A.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

### INTRODUCTION

These cases present the issue of whether Missouri law ("nonbankruptcy law") prevents a creditor from attaching entirety property for non-joint debts (i.e. debts on which only one spouse is liable). The Court holds that non-exempt equity in entirety property may not be attached by non-joint creditors under Missouri law and consequently, under 11 U.S.C. § 522(b)(2)(B),[1] such equity may not be considered in the best interests test of creditors test at § 1325(a)(4). However, the facts and circumstances of these cases fail to satisfy the § 1325(a)(3) requirement that Chapter 13 plans be proposed in "good faith," and confirmation of each plan must be denied.

1. The Bankruptcy Code is 11 U.S.C. §§ 101–1330. All future references are to Title 11 unless otherwise indicated.

2. The total amount of the four (4) joint debts is $8,829.00.

3. Trustee indicates that at the first meeting of creditors pursuant to § 341, the Debtors testified

### JURISDICTION

This Court has jurisdiction over the subject matter of these proceedings pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and enter appropriate judgements pursuant to 28 U.S.C. § 157(b)(2)(A).

### STATEMENT OF FACTS

Ben Joe Smith ("Husband") and his wife, Diana Lee Murray Smith ("Wife"), (collectively the "Debtors") filed separate Chapter 13 plans in this Court one (1) day apart. Both Schedules A and B list identical assets. Schedule F in each case lists unsecured, non-priority debts for which the spouses are jointly liable.[2] Additionally, Husband's Schedule F contains three (3) debts exclusive to him, and Wife's Schedule F contains four (4) debts exclusive to her. Schedules I and J, listing household income and expenses respectively, are also identical.

Debtors own their principal residence as tenants by the entirety. Each Debtor's Schedule D values the residence at $54,100,[3] and lists the amount due on the first mortgage as $7,960. Each debtor claims an $8,000 exemption in this property.[4]

Wife's First Amended Plan proposes to pay three (3) of the four joint debts in full, and Husband's First Amended Plan ("Plan(s)") propose to pay the remaining joint debt in full. Husband's plan predicts a 33% dividend on his unsecured, non-priority debt, and Wife's plan estimates a 35% return on her unsecured, non-priority debt. All the Debtors' debts, joint and non-joint, are credit card debts or cash loans with the stated consideration being "clothing and misc. hhg" or "misc. electronic items."

that the value of the home was $55,000 to $60,000. The Court must accept the scheduled amount, and that number is used in the § 1325(a)(4) analysis.

4. See Mo.Rev.Stat. § 513.475 (1994).

John V. LaBarge, Jr. (the Standing Chapter 13 "Trustee") objected to each of the proposed plans. Trustee claims that the non-exempt equity in the principal residence, which he calculates at $31,200 to $37,600, would require a 100% dividend to all unsecured creditors had the Debtors filed a joint petition. *See* § 302. Trustee asserts that Debtors filing separate cases violates the requirements of § 1325(a)(4) and he asks the Court to substantively consolidate the cases. Alternatively, Trustee argues that filing separate cases with identical assets (including substantial exempt equity in entireties property), income and expenses over the minimum allowable term for a Chapter 13 plan establishes that the plans were not filed in good faith as required by § 1325(a)(3).

Debtor opposes consolidation arguing that joint debts are being paid in full and exclusive unsecured creditors are to receive more than they would in a Chapter 7. Debtors also insist that they cannot be forced to file a joint petition. The parties have briefed the issues.

### DISCUSSION

■ The "best interest of creditors" test under § 1325(a)(4) provides:

Except as provided in subsection (b), the court shall confirm a plan if the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date.

In applying this statutory requirement for confirmation, a court must consider only that property that would be included in a hypothetical Chapter 7 estate. *Education Assistance Corp. v. Zellner*, 827 F.2d 1222 (8th Cir.1987); *In re Jackson*, 173 B.R. 168 (Bankr.E.D.Mo.1994). Thus, this Court must conduct a hypothetical Chapter 7 liquidation analysis for each Debtor to determine whether each creditor of the Chapter 13 estate will receive at least as much as it would in that

hypothetical Chapter 7 case. The first critical issue in this analysis is whether the non-exempt equity held in tenancy by the entirety in the Debtors' personal residence must be considered in this best interest calculation.

### I. Tenancy by the Entirety in bankruptcy

■ The Eighth Circuit discussed the application of Missouri tenancy by the entirety law in a bankruptcy context in *Garner v. Strauss*, 952 F.2d 232 (8th Cir.1991). In *Garner*, the court held that the broad language of § 541(a)(1) brings a debtor's interest in entirety property into the bankruptcy estate. 952 F.2d at 234. The court then considered whether the property interest of the debtor could be exempted under § 522(b)(2)(B), and specifically, "whether Missouri's nonbankruptcy law prevents creditors from attaching property where both holders of the entirety interest are jointly indebted to creditors." 952 F.2d at 234. After analyzing Missouri cases and recognizing the Missouri Supreme Court's silence on the issue, the Eighth Circuit concluded that the Missouri Supreme Court would not prevent creditors from accessing tenancy by the entirety property where the entirety owners are jointly indebted to the creditor. 952 F.2d at 235. *See also In re Johnson*, 132 B.R. 403, 405 (Bankr.E.D.Mo.1991). The court noted that Missouri's non-bankruptcy law exempts entirety property from execution where only one of the entirety interest holders is indebted. *Garner*, 952 F.2d 232 at 235 n. 1 *citing Otto F. Stifel's Union Brewing Co. v. Saxy*, 273 Mo. 159, 201 S.W. 67, 71 (1918) *see also Estate of Savage*, 650 S.W.2d 346, 351 (Mo.Ct.App.1983) ("The estate of tenancy by the entirety is well established in [Missouri]. Property so held is not subject to a lien or attachment for the debt of one tenant.")

Employing these principles to this case, it is clear that the Debtors' joint creditors could access the entirety equity under Missouri non-bankruptcy law.[5] *Garner, supra,; In re Mayes*, 141 B.R. 669, 670 (Bankr. E.D.Mo.1988) ("... the Debtors' entireties property shall first be distributed to the Debtor's joint creditors who have filed timely claims less administrative expenses and ap-

---

5. Debtors apparently recognized this principle as illustrated by their amending their original plans

to pay the joint creditors 100%.

propriate exemptions."); *In re Charles,* 123 B.R. 52, 55 (Bankr.E.D.Mo.1991) ("[U]nder Missouri law, entireties property is *not* exempt from process to the extent of joint debts.") (emphasis in original); *In re Riley,* 48 B.R. 194, 195 (Bankr.E.D.Pa.1985) (Chapter 13 debtor may not exempt real property owned with co-debtor spouse in tenancy by the entirety from a joint judgement lien). The issue then becomes whether the equity remaining *after* payment of these joint debts—the equity attributable to each Debtor's estate—is exempt from the respective bankruptcy estates under § 522(b)(2)(B).

## II. § 522(b)(2)(B)

▮ In addition to exempting property according to Missouri law, § 522(b)(2)(B) provides:

"Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate ... any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety ... *the extent that such interest as a tenant by the entirety ... is exempt from process under applicable nonbankruptcy law.*"

(emphasis added).

Literal application of this Missouri nonbankruptcy law under § 522(b)(2)(B) exempts from a Chapter 7 trustee's administration the non-exempt entirety equity in Debtors' principal residence from their respective bankruptcy estates to the extent only one spouse is liable on a debt.

This interpretation is consistent with bankruptcy courts in other jurisdictions which, applying laws of different states, have concluded that a Chapter 13 debtor may claim tenancy by the entirety property as exempt under § 522(b)(2)(B) as to individual creditors. *See In re Chandler,* 148 B.R. 13, 15 (Bankr.E.D.N.C.1992); *In re Banks,* 22 B.R. 891 (Bankr.W.D.N.C.1982); *In re Thomas,* 14 B.R. 423, 427–28 (Bankr.N.D.Ohio 1981) *Cf. In re Digaudio,* 127 B.R. 713 (Bankr. D.Mass.1991) (applying the Massachusetts statute and state judicial interpretations). This Court concludes that after payment of joint debts, entirety equity is returned to each owner as an entirety interest and not as an interest in common.

## III. Calculating non-exempt equity in the residence

▮ Debtor argues that spouses cannot be forced to file jointly. That very well may be true, but § 1325(a)(4) requires an analysis based upon the liquidation of a particular debtor's estate.[6] Since each did, in fact, file a separate case the Court must conduct a separate § 1325(a)(4) analyses:

| | | |
|---|---|---|
| **Residential Fair Market Value** | | = $54,100 |
| (minus) | Hypothetical real estate broker fee [7] | = $ 3,787 |
| (minus) | Homestead exemption | = $ 8,000 |
| (minus) | Head of household exemption [8] | = $ 1,350 [9] |
| (minus) | First mortgage | = $ 7,960 [10] |
| **TOTAL NON–EXEMPT RESIDENTIAL EQUITY** | | = $33,003 |

**6.** *Cf. Chandler,* 148 B.R. 13, 15. In *Chandler,* the court determined it need not decide the issue of whether an individual unsecured creditor in Chapter 7 share in the proceeds of a § 363(h) sale after joint creditors are paid. The court reasoned that this analysis was unnecessary since a "§ 363(h) sale is not the only method of satisfying joint creditors in a chapter 7." The court listed refinancing or repayment from non-estate funds a as examples. This Court agrees that alternative methods of satisfying joint creditors exist, but does not believe such alternative methods should be considered in the § 1325(a)(4) analysis.

**7.** The hypothetical real estate broker's fee is calculated at 7% of the value of the principal residence.

**8.** The Court recognizes that only one (1) of the Debtors could claim the head of household exemption. Furthermore, it is unclear from Debtors' schedules, including amended schedules, whether the exemption was claimed. Nevertheless, the Court will include the head of household exemption in calculating of non-exempt equity in the principal residence.

**9.** This amount includes the $850 head of household exemption plus an additional $250 for each of the Debtors' two (2) minor children. *See* Mo.Rev.Stat. § 513.440 (1994).

**10.** Each Debtor scheduled the secured claim on the personal residence at $8,800, the claim was

Thus, the Debtors have $33,003 in non-exempt equity in their principal residence held by tenancy-in the entirety. Once the aggregate amount of joint debt ($8,829) is subtracted from this equity, $24,174 remains. A hypothetical Chapter 7 Trustee would allocate one half of this sum, or $12,087, to each spouse or to each spouse's estate. *See* § 363(j) [11]; *In re Meyer*, 187 B.R. 650, 652 (Bankr.W.D.Mo.1995), but as discussed above, this amount would be exempt from administration from each individual Debtor's hypothetical estate pursuant to § 522(b)(2)(B).

Husband has separate unsecured debts of $15,170 [12] and Wife has separate unsecured debts of $19,895.[13] Chapter 7 creditors could not reach any of the entirety equity to the extent only one spouse is liable on the debt. Accordingly, by proposing to pay their personal unsecured debts 33% and 35% respectively, each plan technically satisfies § 1325(a)(4).

## IV. Good Faith

■ Trustee alternatively argues that spouses filing nearly identical schedules with thirty six (36) month plans within one (1) day of each other constitutes a lack of good faith on the Debtors' part. As a requirement to confirmation of a Chapter 13 plan, the Bankruptcy Code requires that "the plan has been proposed in good faith and not by any means forbidden by law." § 1325(a)(3).

■ In determining good faith, this Court must deny confirmation "[i]f, after weighing all the facts and circumstances, the plan is determined to constitute an abuse of the provisions, purpose or spirit of Chapter 13 ..." *In re Estus*, 695 F.2d 311, 316 (8th Cir.1982). In *Estus*, the court listed eleven (11) criteria which a bankruptcy court should consider in the § 1325(a)(3) analysis. 695 F.2d at 317. The Bankruptcy Amendments and Federal Judgeship Act of 1984 narrowed this inquiry by adding § 1325(b). *See Noreen v. Slattengren*, 974 F.2d 75, 76 (8th Cir.1992) (discussing evolution of good faith analysis in Eighth Circuit). However, the *Estus* totality of circumstances approach continues to apply in good faith determinations in this circuit. *Noreen*, 974 F.2d at 76; *In re LeMaire*, 898 F.2d 1346, 1349 (8th Cir.1990) (en banc) *see also Education Assistance Corp. v. Zellner*, 827 F.2d 1222 (8th Cir. 1987).

Four (4) of the *Estus* factors force the Court to conclude that the Debtors' plan were not proposed in good faith:

(3) the probable or expected duration of the plan

(7) the type of debt sought to be discharged

(8) the existence of special circumstances such as inordinate medical expenses

(10) the motivation and sincerity of the debtor.

695 F.2d at 317.

First, the duration of each plan is thirty six (36) months, the minimum allowable under Chapter 13. *See* § 1322(d). Next, Debtors seek to discharge credit card debts for cash advances, "electronic items and misc. hhg.".

---

filed as $7,960. No objections have been filed as to these claims so the Court accepts claim amount as filed. *See* § 502(a).

**11.** § 363(j) provides in relevant part: "After a sale of property to which subsection ... (h) of this section applies, the trustee shall distribute to the debtor's spouse ... and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse ..."

**12.** This amount includes the unsecured debts listed on Schedule F of $15,170.00.

**13.** This amount includes the personal unsecured debts listed on Wife's Schedule F plus the $2,700 for the deficiency claim of "Personal Finance Col.," a creditor secured by the 1988 Chevy Celebrity (Claim amount = $3,900; Value = $1,200). *See* § 506(a). Although Husband filed an Amended Schedule D which omitted the car claim, Wife did not file such an Amended Schedule D, and the Court must consider the deficiency claim in the § 1325(a)(4) analysis.

This fact combined with the absence of any "special circumstances" further illustrates lack of good faith on the Debtors' behalf. Furthermore, the proximity of the filings and the blatant attempt to retain a large amount of non-exempt equity evidences a concerted effort to manipulate of the bankruptcy system to the disadvantage of creditors. When comparing the amount of equity in Debtors' residence to the aggregate amount of unsecured debt, the Court strongly believes that Chapter 13 is not the only avenue of financial relief available to the Debtors.

The Court found no Chapter 13 cases—including those discussed previously in this opinion—where married debtors sought to use § 522(b)(2)(B) to shield entirety equity from individual creditors by filing separate Chapter 13 petitions. To find good faith in this case would be to allow married debtors with a substantial amount of equity in property held in tenancy by the entirety to recklessly incur debt without regard to its consequences; they could simply file separate Chapter 13 petitions and pay their creditors a minimum amount. Although the Bankruptcy Code technically exempts entirety equity in this anomalous case, the Court concludes that such a strategy constitutes an abuse of the provisions, purpose and spirit of the Bankruptcy Code and therefore, fails to satisfy § 1325(a)(3).

■ One purpose of the Bankruptcy Code is "to give the honest debtor the opportunity to reinstate himself in the business world." *LeMaire,* 898 F.2d at 1352 *quoting In re May,* 12 B.R. 618, 621 (N.D.Fla.1980). The Eighth Circuit has recently reemphasized that "the purpose of the bankruptcy code is to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process in order to avoid paying their debts." *In re Molitor,* 76 F.3d 218, 220 (8th Cir.1996). In this case, the Debtors seek to manipulate the Bankruptcy Code to shield substantial entirety equity at the expense of their creditors. To find such a strategy constitutes good faith—when considering the other facts of this case—would be judicial approval of a head start instead of the intended fresh start.

## CONCLUSION

For these reasons, confirmation of each Chapter 13 plan is **DENIED.** The Debtors shall have until **Friday, August 6, 1996** to file amended plans or each case will be dismissed.