**In re John Edward BROWN and Phyllis Joann Brown, Debtors.**

**Bankruptcy No. 97–61897.**

United States Bankruptcy Court, W.D. Missouri, Southern Division.

April 30, 1999.

Fred Charles Moon, Springfield, MO, for Trustee.

Michael D. Textor, Springfield, MO, for Marshfield Mills.

David Schroeder, Springfield, MO, for Debtor/Movants.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Debtors John Edward Brown and Phyllis JoAnn Brown (the Browns) filed a motion to disburse exempt funds held by the Chapter 7 trustee (the trustee) following the sale of real estate that the Browns owned as tenants by the entirety. The trustee and creditor Marshfield Mills, Inc. (Marshfield) objected to this motion. The Browns objected to payment of the judgment debt of Marshfield from proceeds of the sale because the judgment is against Mr. Brown individually, and not against Ms. Brown. The Browns also objected to the deficiency claims of joint creditors Associates Commercial Corporation (Associates) and Ozark Financial Services, Inc. (Ozark) on the grounds that failure to send notice to the trustee prevented the sales of repossessed collateral from being commercially reasonable. The trustee objects to the exemption of the proceeds from the sale of tenants by the entirety property. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## ISSUES PRESENTED

(1) The Browns own real estate as tenants by the entirety. The Bankruptcy Code (the Code) provides that property held as tenancy by the entirety is exempt if such property is exempt from process under applicable nonbankruptcy law. Under Missouri law property held as tenancy by the entirety is exempt from the claims of individual creditors. When the Browns filed this Chapter 11 bankruptcy petition they did not claim the property as exempt. The bankruptcy schedules also list some individual debts as joint debts. After the case converted to Chapter 7, and the real estate was sold by the trustee, the Browns wished to exempt the proceeds of the sale from the claims of their individual creditors. Does the failure to disclose that real estate is held as tenants by the entirety on the bankruptcy schedules waive the exemption? And did the Browns consent to severance of the entirety when they listed individual debts as joint debts on their bankruptcy schedules?

(2) The Browns returned collateral in which Associates and Ozark held security interests. Associates and Ozark then scheduled public auctions of the collateral and sent notice to the Browns directly or through their attorney. The Uniform Commercial Code (the UCC) provides that, as to this collateral, written notice of the time and place of any public sale must be sent to the debtor. The day after notice was sent, the Court converted the Chapter 11 case to Chapter 7, and a trustee was appointed. Were Associates and Ozark required to notify the trustee of the time and place of the public sale in order to claim a deficiency? Ozark sent notice to the Browns' attorney, but not to their home address. Did Ozark have to send notice to debtor's home address, as stated in the security agreement?

## DECISION

Tenants by the entirety cannot impliedly waive the exemption of tenancy by the entireties or consent to the claims of individual creditors by listing individual debts as joint debts on bankruptcy schedules. No evidence was presented to prove that Mr. Brown was Ms. Brown's agent or that Ms. Brown was Mr. Brown's agent such as would make each other liable on individual debts. Nor was any evidence presented to prove Ms. Brown was involved in running the business. Therefore, I will overrule the objection of the trustee and Marshfield to disbursement of the proceeds of the sale of the property held as tenants by the entireties, first to the joint creditors of Mr.

and Mrs. Brown, with any remaining funds to be distributed to Mr. and Mrs. Brown.

Associates and Ozark both sent written notice to the Browns, as the debtor in possession in the Chapter 11 case, on July 8, 1998, of the public sales of collateral that the Browns had returned. In that regard, they complied with the requirements of section 400.9–504(c)(3) of Missouri's Revised Statutes. The case was then converted to Chapter 7 by Order of this Court on July 9, 1998. The debtor in possession is required to turn over to the trustee all records and property of the estate in the possession or control of the debtor in possession after a case has been converted from Chapter 11 to Chapter 7. Any duty to notify the trustee of the sale, therefore, belonged to Brown, not to Associates and Ozark. The sales of collateral were, thus, commercially reasonable, and Associates and Ozark are entitled to their deficiency claims. Brown's objections to those claims will be overruled.

*FACTUAL BACKGROUND*

On November 13, 1997, the Browns filed this Chapter 11 case. On November 25, 1997, this Court entered an Order authorizing the employment of David E. Schroeder to represent the debtor-in-possession in all proceedings under Chapter 11 and all related matters.[1] According to their bankruptcy schedules filed on December 5, 1997, Mr. Brown was self-employed, running an over-the-road trucking operation, and Ms. Brown was a "highway contracted mail route carrier" for the United States Postal Service. The Browns listed two parcels of real estate as exempt property on their schedule C. One parcel was described as farm land consisting of approximately 661.47 acres with a value of $150,000 (the farm land). The value exempt pursuant to

Missouri's Revised Statutes is listed as zero.

The Browns were unable to propose a confirmable plan. On July 8, 1998, at a scheduled confirmation hearing on the First Amended Plan of Reorganization, counsel for the Browns filed a motion with the Court seeking to withdraw the First Amended Plan of Reorganization and asking for leave to file a Plan for Liquidation. Former bankruptcy judge Karen M. See denied that motion and granted creditor Truck Parts & Supply Co., Inc.'s motion to Convert the case to Chapter 7.[2] The Order of conversion was entered on July 9, 1998, and contained the following provision: "Debtor(s) immediately turn over to the Chapter 7 Trustee all records and property of the estate under debtor(s)' custody and control, as required by Bankruptcy Rule 1019(5)[sic]."[3] The Browns were also ordered to file conversion schedules within 15 days of the Order of Conversion. The conversion schedules were filed on August 17, 1998.[4] Schedule C of the conversion schedules again listed the farm land as exempt. This time the value of the farm land is listed as $300,000, and the value exempt is listed as zero.

On July 29, 1998, this Court entered an Order approving the trustee's motion to sell the farm land at a private sale, with net proceeds of $300,000 being paid to the trustee.[5] The Browns now ask the Court to order the trustee to pay their valid joint obligations from the sales proceeds, and to distribute the remainder to them. They acknowledge valid joint debts in the amount of $72,288.28.[6]

The Browns have objected to the deficiency claims of Associates and Ozark. Associates filed a proof of claim for a deficiency in the amount of $74,984. Ozark filed a proof of claim for a deficiency in the amount of $37,405. The Browns

---

1. Doc. # 5.

2. Doc. # 109.

3. *Id.* at ¶ 2.

4. Doc. # 129.

5. Doc. # 123.

6. *See* Deb. Ex. C.

argue that the public auctions for the collateral were held after the case was converted to Chapter 7, therefore, Associates and Ozarks were required to send notice to the trustee in order to preserve their deficiency claims. Since Associates and Ozarks extended credit to both of the Browns, the proceeds of the sale of the farm land is not exempt from the deficiency claims of Associates and Ozarks, if the claims are allowed. Otherwise, the proceeds will be paid to the Browns.

A hearing was held on all these matters on April 14, 1999. At the hearing, the Court took judicial notice of the schedules, Plans of Reorganization (the Plans), and Disclosure Statements filed during the course of this case.

### DISCUSSION

In his objection to the Browns' motion to distribute sale proceeds, the trustee argues that the Browns scheduled their interest in the farm land as "joint" on their bankruptcy schedules. He also claims that the Browns indicated in their proposed plans and disclosure statements that they intended the sale proceeds to be available to fund a plan and pay both joint and separate debts. He further claims that the farm land was sold on August 31, 1998, and the Browns did not claim an exemption as to the proceeds at that time. Nor did the Browns claim an exemption in the proceeds pursuant to section 522 of the Code on their conversion schedules. In fact, the trustee points out that the Browns did not claim an exemption in the sales proceeds until 8 months after conversion and 7 months after the sale. Finally, the trustee claims that it would be inequitable for the Browns to retain part of the

proceeds while discharging the debts of their individual creditors.

Marshfield holds a claim against Mr. Brown only in the amount of $50,538.00. Marshfield argues that tenancy by the entirety property is included in the bankruptcy estate, and that the Browns waived their claim to the sale proceeds of the property by not amending their bankruptcy schedules to claim the farm land as exempt in a timely manner. And Marshfield objects to the Browns' motion on the grounds that a distribution to the debtors after payment of joint creditors would be prejudicial and unfair. I will first address the exemption issue.

"Tenancy by the entirety is a form of ownership in property created by marriage in which each spouse owns the entire property rather than a share or divisible part, and thus at the death of one spouse, the surviving spouse continues to hold title to the property." [7] In other words, the husband and wife have unity of interest, unity of entirety, unity of time, and unity of possession, and both are seized of the entirety.[8] Moreover, in Missouri there is a presumption that both personal property and real estate owned by a husband and wife is held as tenants by the entirety.[9] This form of title derives from ancient common law, and serves the purpose of making it difficult, if not impossible, for a creditor of one spouse to reach that spouse's interest in property held by both spouses as tenants by the entirety.[10] Tenancy by the entirety is distinguishable from joint tenancy by one singular characteristic. The tenancy cannot be destroyed involuntarily by an individual creditor.[11] And one spouse cannot destroy the entirety without the express consent of the other

7. *Rinehart v. Anderson,* 985 S.W.2d 363, 367 (Mo.Ct.App.1998).

8. *Murawski v. Murawski,* 240 Mo.App. 533, 209 S.W.2d 262, 264 (1948).

9. *See, e.g. Scott v. Flynn,* 946 S.W.2d 248, 250 (Mo.Ct.App.1997).

10. *Harris v. Crowder,* 174 W.Va. 83, 322 S.E.2d 854, 858 (1984).

11. *Id.* at 858.

spouse.[12] Though both the trustee and Marshfield indicated in their pleadings that their was some question as to whether the Browns owned the farm land as tenants by the entirety, at the hearing all parties agreed that the title to the real estate so stated. I, therefore, find that at the time of the bankruptcy filing the farm land was held by the Browns as tenants by the entirety. As such, neither the farm land, nor the proceeds of the sale are subject to the claims of individual creditors under Missouri law. However, the trustee and Marshfield contend either that the joint bankruptcy petition alters that legal conclusion or that the Browns waived their right to the exemption by not claiming it on their bankruptcy schedules in a timely manner. As to the Browns right to amend their exemption schedules, the Federal Rules of Bankruptcy Procedure (the Rules) give debtors an unfettered right to amend their exemption schedules "as a matter of course at any time before the case is closed."[13] While the Browns have not amended their schedules as yet, the case has not been closed, and they have the right to do so. Moreover, the Code allows debtors to exempt any interest in property held as tenants by the entirety as long as that interest is exempt under state law:

> (B) [A]n individual debtor may exempt from property of the estate . . .
>
> (2)(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety . . . to the extent that such interest as

a tenant by the entirety is exempt from process under applicable non-bankruptcy law.[14]

Under Missouri law a creditor can only reach tenancy by the entirety property if both spouses have jointly acted to burden the property.[15] In other words, tenants by the entirety property is exempt from the claims of individual creditors. This premise is not altered by the conclusion that the Code's definition of property of the estate is broad enough to include property held as tenants by the entirety.[16] Section 541(a)(1) of the Code provides that the bankruptcy estate is comprised of *all* legal or equitable interests of the debtors in property as of the commencement of the case.[17] But debtors can still exempt from the estate property that is exempt under state law.[18] And in Missouri there is a presumption that real property held by a husband and wife is held as tenants by the entirety.[19]

■■■■ The trustee and Marshfield ask this Court to find that the Browns are not entitled to this exemption because they filed a joint bankruptcy petition. I cannot so find. The Code, the Rules, and Missouri law allow debtors to exempt tenants by the entirety property, and the proceeds therefrom, from the claims of individual creditors. Next the trustee and Marshfield ask this Court to use the power vested in it by section 105 of the Code to disallow the exemption. Section 105 allows the Court to issue any order appropriate to carry out the provisions of the

---

12. *Sutorius v. Mayor*, 350 Mo. 1235, 170 S.W.2d 387, 392 (1943).

13. Fed.R.Bankr.P. 1009(a).

14. 11 U.S.C. § 522(b)(2)(B).

15. *Garner v. Strauss*, 952 F.2d 232, 234 (8th Cir.1991) (citing *In re Savage*, 650 S.W.2d 346, 351 (Mo.Ct.App.1983)); *Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Shackelford*, 591 S.W.2d 210, 215 (Mo.Ct.App.1979); *Kaufmann v. Krahling*, 519 S.W.2d 29, 31 (Mo.Ct.App.1975); *Niehaus v. Mitchell*, 417

S.W.2d 509, 514 (Mo.Ct.App.1967); *Hanebrink v. Tower Grove Bank & Trust Co.*, 321 S.W.2d 524, 527 (Mo.Ct.App.1959)

16. *Garner v. Strauss* at 233–34. *See also, Weaver v. Hamrick*, 907 S.W.2d 385, 388–89 (Tenn.1995).

17. 11 U.S.C. § 541(a)(1)(emphasis added).

18. Mo. Stat. Ann. § 513.427 (Supp.1999).

19. Mo. Stat. Ann. § 442.450 (1986).

**914**

Code or to prevent an abuse of process.[20] Section 105 does not, however, grant the Court the power to issue an Order that is contradictory to express provisions of the Code or Rules.[21]

▪ Finally, the trustee and Marshfield ask this Court to find that the Browns waived their claim of exemption either when they listed individual debts as joint debts on their bankruptcy schedules, or when they provided in their Plan of Reorganization that proceeds from the sale of the farm land would be used to fund the plan. First, who is obligated on a debt is a matter of law that cannot be altered by how the debt is listed on bankruptcy schedules. Second, the Browns were free to voluntarily encumber their tenants by the entirety property in a plan of reorganization, but their plan was not confirmed. The case is now a Chapter 7 case, and no party in interest is bound by provisions of a plan that was not confirmed. Third, waiver of a legal exemption is an intentional relinquishment of a known right.[22] Knowledge of all of the facts is essential to waiver.[23] No evidence was offered that the Browns intended to waive their exemption in the sales proceeds at the time of the sale. At best, the Browns overlooked this exemption at the time they filed their bankruptcy schedules and conversion schedules. I find that the Browns have not intentionally waived their exemption in the farm land, nor are they precluded from amending their schedules at any time before the case is closed. Debtors will be granted 20 days to file amended exemption schedules that conform with their intent, as presented in the pleadings and evidence at the hearing, and with the findings of fact and conclusions of law in this Memo-randum Opinion. Until that time, the trustee and Marshfield's objection to the Browns motion to distribute the proceeds of the sale of tenancy by the entirety property first to joint creditors with any remaining proceeds to the Browns will be overruled.

▪ I will next deal with the Browns' objection to the deficiency claims of Associates and Ozark. The Code provides that the trustee is the representative of the estate.[24] But, this case was filed under Chapter 11 of the Code. And, in a Chapter 11 case, the debtors in possession, in this case the Browns, have all the rights and powers of a trustee.[25] The case was then converted to Chapter 7. Immediately after a case is converted to Chapter 7, the United States trustee appoints an interim trustee until such time as a trustee can be elected or appointed.[26] Either the interim trustee or the trustee then administers the estate and performs other duties as required by the Code.[27] On July 8, 1998, while the case was still in Chapter 11, both Associates and Ozark sent notice to the Browns of the public sale of the collateral that the Browns had voluntarily returned to both creditors. As to Ozark, the notice was mailed to David Schroeder, as the Browns' representative in this bankruptcy case. The Order of Conversion entered by this Court ordered the Browns to turn over to the trustee all records and property of the estate under the Browns' custody and control.[28] The Browns now claim that Associates' and Ozark's failure to send notice to the trustee, as representative of the estate, is fatal to their deficiency claim. The Browns are correct that, under Missouri law, a creditor's right to a deficiency following the repossession of personal

20. 11 U.S.C. § 105(a).

21. *Viking Assoc. v. Drewes (In re Olson),* 120 F.3d 98, 102 (8th Cir.1997).

22. *Id.* at 396.

23. *Id.*

24. 11 U.S.C. § 323.

25. 11 U.S.C. § 1107.

26. 11 U.S.C. § 701 and 702.

27. *See* 11 U.S.C. § 704.

28. Doc. # 109.

property secured by a properly perfected security interest is dependent upon proper written notice of the sale:

> (3) Dispositions of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcel and at any time and place and on any terms but every aspect of the Disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor.[29]

In fact, it is undisputed that the right to a deficiency exists only if the creditor strictly complies with these statutory requirements.[30] Voluntary surrender of the collateral by the debtor does not negate the necessity for written notice of the sale of collateral by the creditor, and a debtor's right to written notice cannot be waived or varied by any pre-default agreement.[31] Here, however, the issue is whether the notice should also have been sent to the trustee as the estate's representative. The Browns cite three cases that hold that the trustee is entitled to written notice prior to the sale of repossessed collateral.[32] These three cases, however, were filed under Chapter 7, therefore, the trustee had been appointed at the time notice was sent to the debtors. There was no debtor in possession with all of the rights and duties of a trustee at the time notice was sent, as in this case. Moreover, the Rules require the debtor in possession to turn over to the trustee "all records and property of the estate in the possession or control of the debtor in possession."[33] Thus, the Browns were obligated to provide notice to the trustee, upon his appointment, of the scheduled sale of the collateral. It would be inequitable to deny Associates and Ozark their deficiency claim when they complied with the requirements of section 400.9–504(3) at the time the notice was sent. The Browns cited no cases that found secured creditors have an ongoing duty to monitor a Chapter 11 case in the event it converts to Chapter 7 after written notice is sent to the debtor in possession. Nor do I find such a duty in light of Rule 1019(4), which clearly places the burden on debtors in possession to turn over all records to the trustee when a case is converted from Chapter 11 to Chapter 7. And the Browns' duty to notify the trustee is especially relevant in this case, where the Browns, not the unsecured creditors, will benefit if the secured creditors, who are joint creditors of the Browns, are denied their deficiency claims.

■■■■ Finally, the Browns argue that the Ozark security agreement requires that notice be sent to the debtors at their home address, not to their attorney. Missouri law requires compliance with the UCC to preserve a deficiency claim.[34] The UCC requires that notice be sent to the debtor, but does not specify that it be sent to debtor's home address. At the time

---

**29.** Mo. Stat. Ann. § 400.9–504(3).

**30.** *Executive Financial Serv., Inc. v. Garrison,* 722 F.2d 417, 418 (8th Cir.1983); *Commerce Bank of St. Louis, N.A. v. Dooling,* 875 S.W.2d 943, 946 (Mo.Ct.App.1994); *Ford Motor Credit Co. v. Freihaut,* 871 S.W.2d 129, 130–31 (Mo.Ct.App.1994); *Boatmen's Bank of Pulaski County v. Brooks,* 869 S.W.2d 781, 783 (Mo.Ct.App.1994).

**31.** *RWR, Inc. v. DFT Trucking, Inc.,* 899 S.W.2d at 878.

**32.** *Jones v. Star Bank, South Central Ohio (In re Angel),* 142 B.R. 194 (Bankr.S.D.Ohio 1992); *In re Floca,* 126 B.R. 274 (Bankr. W.D.Tex.1991); *First Nat'l Bank and Trust Co. of Tulsa v. Hutchins (In re Buttram),* 2 B.R. 92 (Bankr.N.D.Okla.1979).

**33.** Fed.R.Bankr.P. 1019(4).

**34.** Mo. Stat. Ann. 400.9–504 (1994).

this case was filed, the Browns designated Mr. Schroeder to act as their agent "to receive service of process in all proceedings in this Court arising under this case." [35] The Order Authorizing Employment of Attorney authorized Mr. Schroeder to represent the Browns in the Chapter 11 case and in "all related matters." [36] I note that the Browns do not claim that Mr. Schroeder failed to inform them of the notice of the sale. Nor do they claim Mr. Schroeder was not acting as their agent at the time the collateral was surrendered and the sales were conducted. I find that by sending notice to Mr. Schroeder, Ozark complied with the requirements of the UCC. The Browns cited no cases that stated the failure to send notice to debtors' address, as required by the security agreement, was fatal to a deficiency claim, provided debtors complied with the UCC. Nor did they cite to any cases that held the UCC required secured creditors to send notice to debtors at their home address, as long as the secured creditor sent notice to the debtors' designated agent.

Under these circumstances, I find that Associates and Ozark complied with the Code, the UCC, and Missouri law. As such the sales of repossessed collateral were commercially reasonable and both Associates and Ozark are entitled to their deficiency claims. The Browns' objections to these two claims will be overruled.

An Order in accordance with this Memorandum Opinion will be entered this date.

---

**35.** Doc. # 1 (Designation of Agent).

**36.** Doc. # 5.