**In re David A. EADS, Debtor.**

**In re Tina L. EADS, Debtor.**

Nos. 01–30506–JWV, 02–30266–JWV.

United States Bankruptcy Court,
W.D. Washington,
Western Division.

March 10, 2004.

J. Kevin Checkett, Checkett & Pauly, Carthage, MO, for Patricia Ann Brown, trustee.

Steven L. Crouch, South & Associates, Kansas City, MO, for U.S. Bank, N.A.

Jason Higdon, Joplin, MO, for Firstar Bank, N.A.

Tina Longnecker, Whitwoth, McPherson & Longnecker, Joplin, MO, Norman E. Rouse, Collins, Webster & Rouse, Joplin, MO, for Tina L. Eads.

Juddson H. McPherson, Joplin, MO, for Southwest Missouri Bank.

Walter E. Williams, Joplin, MO, for David A. Eads.

### MEMORANDUM OPINION

JERRY W. VENTERS, Chief Judge.

On December 16, 2003, Checkett & Pauly, P.C. ("Checkett & Pauly") filed an application for approval of $10,706.21 in attorney's fees and expenses for services rendered to Patricia Brown, the Chapter 7 Trustee ("Trustee") in these Chapter 7 cases. Tina Louise Eads ("Tina"), whose bankruptcy has been administratively consolidated with that of her spouse, David A. Eads ("David"), objected to the application. Tina does not object to the amount of the attorney's fees and expenses; rather, she protests that Checkett & Pauly's claim is not a joint debt of David and Tina and cannot be paid out of their exempt property. The Court held a hearing in this matter on February 26, 2004, in Carthage, Missouri, at which time the Court took the matter under advisement. After consideration of the parties' positions and the relevant law, the Court is prepared to rule that Checkett & Pauly may not seek satisfaction of its claim out of the debtors' exempt assets, but as an administrative claim holder Checkett & Pauly must receive payment before any of the proceeds of the entireties property is paid to David and Tina's joint unsecured creditors.

### I. BACKGROUND

This is not the first time that the parties in this matter have been before the Court disputing the administration of their former marital home in bankruptcy. On October 25, 2001, the Court held a hearing to determine the proper division of proceeds

of entireties property between David and Tina at a time when only David had filed bankruptcy. In a subsequent Memorandum Opinion, the Court made the following findings of fact:

> The Debtor, David A. Eads ... filed his petition under Chapter 7 of the Bankruptcy Code on May 16, 2001. At the time of the filing, David was married to Tina Louise Eads ... but Tina did not join in the bankruptcy filing. Also at the time of filing, David and Tina were the owners, as tenants by the entireties, of a residential property located at 1837 Hickory Hills Drive in Joplin, Missouri, which has a value of between $130,000.00 and $139,000.00 and which is encumbered by a mortgage debt to Great Southern Bank in the amount of $39,836.10 and a second lien of $6,204.21 in favor of Firstar Bank, according to the Debtor's schedules. There is, therefore, between $84,000.00 and $93,000.00 of equity in the property. Both David and Tina are liable on both mortgage debts. In addition to the mortgage debts, David and Tina have a number of joint debts, such as credit card debts and a deficiency balance on a repossessed vehicle ....

> .   .   .   .   .

> David has not claimed a Missouri homestead exemption in the property because he no longer lives in the property. Tina has continued to reside in the residence since David filed his bankruptcy petition, and Tina has been paying the mortgage payments and the other costs of occupancy.

1. David did not originally claim a homestead exemption, but on January 30, 2002, he amended his Schedule C to claim as exempt the property that he held as a tenant by the entirety with Tina.

2. With both Tina and David in bankruptcy, their joint debts must be paid out of the

*Brown v. Eads (In re Eads)*, 271 B.R. 371, 372–73 (Bankr.W.D.Mo.2002).

Several months after the issuance of that Memorandum Opinion, Tina filed a Chapter 7 bankruptcy petition on March 14, 2002. She claimed both a Missouri homestead exemption in the marital residence and an exemption based on the fact that she held the property in a tenancy by the entirety with David.[1] On May 3, 2002, the Trustee sold David and Tina's home for $110,000.00. After payment of the secured indebtedness, transaction costs, and required repairs, there remained $50,146.64 in net proceeds, which were turned over to the Trustee and placed in separate estate accounts of $25,073.32 each.

Regarding the payment of joint debts, the Court had ordered after the hearing on October 25, 2001—a time when only David had filed bankruptcy-that the net proceeds from the sale of real estate must be divided equally between David and Tina, and that David's one-half share of those proceeds must be applied by the Trustee to payment of the parties' joint debts only. After that decision was entered, however, Tina filed for bankruptcy, rendering the Court's Order to pay the joint debts out of David's share alone moot.[2] In total, the parties estimate they have $9,500.00 in joint debts payable from the proceeds of the sale, although in oral argument counsel suggested the amount might be substantially higher than that.

On May 16, 2002, the Court administratively consolidated David and Tina's Chap-

proceeds of the liquidated entireties property before either David or Tina can receive anything. *In re Smith*, 200 B.R. 213, 216 (Bankr. W.D.Mo.1996) ("This Court concludes that after payment of joint debts, entirety equity is returned to each owner as an entirety interest and not as an interest in common.").

ter 7 cases. On February 25, 2004, David's account held a balance of $25,699.26, and after payment of Tina's $8,000.00 homestead exemption, her account held $15,937.66.[3] All of the money in the two estates was derived from the sale of the Eadses' marital residential property. As special counsel to the Trustee, Checkett & Pauly expended $10,706.21 in services and costs litigating, *inter alia*, the sale of the land and the proper way to apportion the proceeds from the sale. J. Kevin Checkett advised the Court that many issues were vigorously—and needlessly—contested, particularly by Tina.

## II. DISCUSSION

The issue before the Court is whether the Trustee's attorney's fees and expenses can be paid out of the exempt funds remaining in the bankruptcy estates after payment of the debtors' joint debts. Tina argues that only the Eadses' joint debts are payable out of the sale proceeds of the home she held with David as a tenant by the entirety, and that the sale proceeds cannot be used to pay the administrative claim of Checkett & Pauly because the remaining sale proceeds are exempt property. Tina does not contest that Checkett & Pauly may be paid out of the proceeds earmarked to pay joint creditors. David has taken no position on the issue.

### A. Missouri's Exemption for Entireties Property

Missouri opted out of the federal exemptions listed in 11 U.S.C. § 522(d), and allows a debtor filing bankruptcy to exempt from property of the estate "any property that is exempt from attachment and execution under the law of the state of Missouri." Mo.Rev.Stat. § 513.427. Also, 11 U.S.C. § 522(b)(2)(B) provides that a debtor using state law exemptions may exempt "any interest in property in which the debtor had ... an interest as a tenant by the entirety ... to the extent that such interest as a tenant by the entirety ... is exempt from process under applicable nonbankruptcy law."

▪ Missouri recognizes that property may be held by spouses in a tenancy by the entirety. "Tenancy by the entirety is a form of ownership in property created by marriage in which each spouse owns the entire property rather than a share or divisible part, and thus at the death of one spouse, the surviving spouse continues to hold title to the property." *Rinehart v. Anderson*, 985 S.W.2d 363, 367 (Mo.Ct. App.1998). The result of titling property as a tenancy by the entirety is that creditors find it difficult, if not impossible, to reach one spouse's interest in the property when the other spouse did not consent to the creation of the underlying debt. *In re Brown*, 234 B.R. 907, 912 (Bankr.W.D.Mo. 1999). In other words, a creditor may only seek satisfaction from entireties property if the spouses have acted jointly to burden the property, and in the absence of joint action, the property is exempt from attachment and execution. *Otto F. Stifel's Union Brewing Co. v. Saxy*, 273 Mo. 159, 201 S.W. 67, 71 (1918); *Garner v. Strauss (In re Garner)*, 952 F.2d 232, 235 (8th Cir.1991); *In re Smith*, 200 B.R. 213, 217 (Bankr.E.D.Mo.1996). In bankruptcy, the effect of holding a joint obligation is important inasmuch as the creditor has the right to be paid from the proceeds of entireties property; the pool of available funds for individual creditors is generally much smaller. *See In re Oberlies*, 94 B.R. 916, 920, 923 (Bankr.E.D.Mich.1988) (stating that a trustee may administer entireties assets only for the benefit of joint creditors and recognizing the judicially created

3. The increases in the accounts are attributable to interest earned on the accounts.

administration of separate estates within the context of an overall bankruptcy for the benefit of individual creditors and for joint creditors, which is necessary to give effect to substantive state law). Once the spouses obtain a divorce, the tenancy by the entirety is destroyed, and the form of ownership is converted into a tenancy in common. *Ronollo v. Jacobs,* 775 S.W.2d 121, 123 (Mo.1989).

■ Because David and Tina held their former home as tenants by the entirety, only creditors holding joint debts under Missouri law may seek satisfaction from the proceeds of its sale.

## B. Administrative Expense Claims Impairing an Exemption

■ Under 11 U.S.C. § 503(b)(2), the compensation of a professional person hired by a trustee under §§ 327 and 328, whose fee is approved by the court under § 330(a), is entitled to an administrative expense claim against the bankruptcy estate. Holders of administrative claims are entitled to first priority in the distribution of estate assets.[4] §§ 507(a)(1) and 726(a)(1). Holders of administrative expense claims cannot, however, be paid from exempt assets. "Property that the debtor exempts under this section is not liable for the payment of any administrative expenses ...." 11 U.S.C. § 522(k).

*See also Scott v. United States Trustee,* 203 B.R. 925, 930 (W.D.Va.1997) (in which the District Court stated that the effect of § 522(k) "is to deny the trustee his proper commission, and, worse, reimbursement of his out of pocket expenses—all without fault on the part of the trustee" and that the result is yet "another dreary case of unintended consequences."), *aff'd* 1997 WL 787128, 1997 U.S.App. LEXIS 3609 (4th Cir.1997) (unpub.); *In re Turner,* 190 B.R. 836, 841 (Bankr.S.D.Ohio 1996) (refusing to reduce the amount of an exemption to pay attorney's fees that were allowable as an administrative expense); *In re Duby,* 98 B.R. 126, 126 (Bankr.D.R.I.1989) (holding that funds left over from the sale of real property claimed as exempt must be paid over to the debtor in satisfaction of his homestead exemption, and the administrative expenses of the sale may only be satisfied on a *pro rata* basis from any remaining funds of the estate); *In re Lambdin,* 33 B.R. 11, 12 (Bankr. M.D.Tenn.1983) (providing that proceeds from the trustee's sale of the debtor's property would first have to be used to extinguish any valid liens on the property, then to pay the debtor's claimed exemption, and any excess would be utilized to satisfy claims against the estate, of which administrative expenses have first priority).

4. The Court notes that under certain circumstances, a trustee may claim fees and expenses related to the sale of estate property under 11 U.S.C. § 506(b) and (c), which allows the trustee to recover administrative expenses from the collateral of a secured creditor to the extent that the expenditures benefit the secured creditor. In this matter, however, there is no pending claim for the apportionment of a § 506 expense, and Checkett & Pauly's application for fees and expenses was clearly made pursuant to §§ 328 and 330 of the Bankruptcy Code.

Additionally, in some cases, the trustee has attempted to exercise the strong arm powers of 11 U.S.C. § 544 by asserting the right to invade otherwise exempt entireties property under the guise of a hypothetical joint creditor. Courts have generally found that such a position is untenable inasmuch as the argument renders 11 U.S.C. § 522(b)(2)(B) nugatory. *See e.g., In re Greathouse,* 295 B.R. 562, 567–68 (Bankr.D.Md.2003) (stating that the trustee's argument would, in effect, overrule the continued protection of the tenant by the entirety's interest against claims of non-joint creditors and thereby throw out a part of the Bankruptcy Code).

There is no dispute in this matter that Checkett & Pauly's fees and expenses are allowable administrative claims entitled to first priority for payment pursuant to 11 U.S.C. §§ 507(a)(1) and 726(a)(1). An administrative expense claim, however, is not a joint debt, and although the cases have been administratively consolidated, Checkett & Pauly's fees are assessable against each bankruptcy estate individually.[5] The mere fact that the majority of fees were incurred in the administration of a common asset in two different bankruptcy proceedings is simply insufficient to create a joint debt. Payment of Checkett & Pauly's administrative claim out of the exempt proceeds of entireties property is impermissible under § 522(k).

## C. Payment of Joint Debts and the Order of Priority

Even though Checkett & Pauly's fees and expenses are entitled to first priority in distributions from the estate as an administrative claim, and even though those fees and expenses cannot be satisfied from the remaining proceeds of exempt entireties property because the administrative claim is not a joint debt, payment of the administrative claim must be made before any payment to unsecured creditors—whether those unsecured creditors hold joint debts or not—pursuant to the plain language of 11 U.S.C. §§ 507(a) and 726(a).

David and Tina list approximately $9,500.00 in joint debts which are payable out of the entireties property. Regardless of the amount of the joint debts, however, no payment may be made to the unsecured creditors until Checkett & Pauly's $10,706.21 administrative claim has been paid in full. To hold otherwise would be to upset the priority scheme of the Bankruptcy Code. To recover the balance of its claim, Checkett & Pauly must look to the distributions to creditors out of the nonexempt property of the estates, if any. Because Checkett & Pauly's administrative expense claim is assessable against either David or Tina's bankruptcy estate, the Court finds it appropriate to assess the unpaid balance of Checkett & Pauly's administrative claim, after satisfaction from the monies earmarked for the payment of joint creditors, to David and Tina's estates as a several obligation.

## III. CONCLUSION

There being no objection filed to the amount of Checkett & Pauly's fees and expenses, and after conducting its own review of the itemized time sheets the Court finds the fees reasonable and of benefit to the bankruptcy estates and will allow Checkett & Pauly an administrative expense claim in the amount of $10,706.21. This administrative expense claim cannot be satisfied out of exempt assets of the estate of either David or Tina, but under the Bankruptcy Code's priority payment rules, Checkett & Pauly must receive payment of its administrative claim before creditors holding the joint debts of David and Tina may be paid. The unpaid balance of Checkett & Pauly's administrative claim is assessable against David and Tina's estates as a several obligation.

---

**5.** The Court ordered the administrative consolidation of David and Tina's bankruptcy cases—not substantive consolidation—and the court need not address whether administrative expense claims are joint post-petition debts in the context of substantively consolidated cases. *See Reider v. FDIC (In re Reider),* 31 F.3d 1102, 1109 (11th Cir.1994) (providing that administrative consolidation is a procedural tool permitting use of a single docket for administrative matters, including the listing of claims, notices to creditors, and the joint handling of other ministerial matters, as compared to substantive consolidation, which is "a measure vitally affecting substantial rights.").

The conclusion reached herein is distasteful to the Court and unfair to creditors. By all rights, Tina and David should be required to pay the Trustee's attorney's fees and expenses out of their separate (though exempt) funds, particularly since those fees and expenses were largely incurred as a result of the debtors' continued marital squabbles. There was nothing unique or unusual about these cases to require the incurrence of attorney fees of this magnitude, had it not been for the marital bickering. Requiring that the fees and expenses be paid out of the monies that would otherwise be paid to the joint creditors of the Eadses is unfair to those creditors and seems to reward the Eadses for their intransigence. Not paying Checkett & Pauly's fees and expenses in full is likewise unfair. Nevertheless, the Court has concluded that the Bankruptcy Code dictates the result reached.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr.P. 9021.